UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

                                             Case No. 1:22-cr-64

v.

                                             HON. JANE M. BECKERING

TOMMY KIRTDOLL AND AMANDA
KOWALEWSKI,

     Defendants.

_____/

## OPINION

Defendants Tommy Kirtdoll and Amanda Kowalewski are charged in five counts with methamphetamine conspiracy, distribution, and possession with intent to distribute as well as cocaine and cocaine base possession with intent to distribute (Indictment, ECF No. 1). Pending before the Court is Defendants' Motion to Suppress (ECF No. 37).[1] The government filed a response in opposition (ECF No. 48) and Defendants each filed a reply (ECF Nos. 50 & 51). On October 12, 2022, this Court issued a notice of hearing on the motion to suppress (ECF No. 45). Having considered the parties' submissions, the Court concludes that neither an evidentiary hearing nor oral argument are necessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d); *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019); *United States v. Baker*, 839 F. App'x 984, 989 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 119 (2021). For the following reasons, the Court denies Defendants' motion.

---

[1] On October 12, 2022, this Court granted Defendant Kowalewski's motion for joinder (ECF No. 42) in Defendant Kirtdoll's motion to suppress (Order, ECF No. 44).

## I. BACKGROUND

In November 2021, members of the Southwest Enforcement Team (SWET) narcotics task force began investigating a methamphetamine trafficking organization in Niles, Michigan involving Defendants (Defs' Ex. A, ECF No. 38-1 at PageID.78).  As part of the investigation, a search warrant was issued by the State of Michigan 4th District Court on March 2, 2022, signed by Cass County District Court Judge Stacey A. Rentfrow (*id.* at PageID.74).  The search warrant includes an affidavit in support signed and submitted by Detective Trooper Joshua Ashlock (*id.* at PageID.77).  The warrant describes the property to be searched as:

> The Premises commonly referred to as 893 Carberry Road, Howard Township, County of Cass, State of Michigan … is a one story, single family dwelling, being light blue in color with white trim …. [I]t is the first structure on the North side of Lizzi Street and is located on the east side of Carberry Road. This residence has a front door facing south towards Lizzi Street and the driveway to the residence runs perpendicular to Lizzi Street. There is a red star affixed to the siding of the west side of the residence. This residence has a Cass County Tax Identification Number of 14-020-031-049-01 and is owned by Ruthie Cross …

(*id.* at PageID.74).  The affidavit sets forth information regarding SWET's investigation, as well as information supporting Defendants' involvement (*id.* at PageID.78–80).  The affidavit also describes the premises and Defendants' connection to the premises, namely:

- Amanda Kowalewski was "surveilled driving to Lizzi Street, Howard Twp., Cass County, Michigan" following an alleged drug deal occurring on November 17, 2021 (*id.* at PageID.78, ¶ E);

- "Lizzi Street is a dirt road that runs perpendicular to Carberry Rd., Howard Twp., Cass County, Michigan. There are two residence that have driveways on Lizzi Street" with "[o]nly one residence … on the North side of Lizzi Street. This residence has a commonly known address of 893 Carberry Rd., Howard Twp., Cass County, Michigan" (*id.* ¶ F);

- "Tommy Lamont Kirtdoll is currently on federal probation … U.S. Probation Officer Cameron Wilbur … is the case officer of Kirtdoll. Officer Wilbur … stated … Kowalewski is listed as the significant other to Kirtdoll … [and that] 893 Carberry Road., Niles Michigan, was a residence Kirtdoll was parolled [sic] to, prior to having his parole transfered [sic] to the State of Indiana" (*id.* ¶ G);

2

- On January 4, 2021, "a grey Dodge Charger … registered to Kowalewski" was observed in a "clear hand to hand delivery[.]" "Detective Frucci positively identified the driver of the grey Dodge Charger as Kirtdoll. SWET detectives surveilled Kirtdoll after the deal where he was seen driving straight to 893 Carberry Rd., Howard Twp., Cass County, Michigan" after the alleged deal (*id.* at PageID.79, ¶ I); and

- On January 11, 2021, a "black Pontiac Grand Prix … registered to Kowalewski" and appeared to be driven by Kowalewski "was surveilled driving straight back to 893 Carberry Rd., Howard Twp., Cass County, MI by Det. Frucci" after two observed meetings with Jennifer Donoho (*id.* ¶¶ K–L).

The parties agree that the warrant contained two errors:  (1) it described the property to be searched as "the Premises commonly being referred to as 839 Carberry Road," when it is apparently more accurately described as 893½ Carberry Road; and (2) the last two digits of the property's Cass County Tax Identification number are incorrect (ECF No. 38 at PageID.70; ECF No. 48 at PageID.114).  The parties both state that the Tax Identification number included on the warrant, 14-020-031-049-01, associated with the address "893 Carberry Road" and identifying the owner as Ruthie Cross, is another property (Defs' Ex. 2 to Affidavit of Gary Gaudard, ECF No. 38-2 at PageID.91; Govt's Ex. 4, ECF No. 48-4 at PageID.139).  The parties also state that the Tax Identification number relating to "Lizzi" Street and identifying the owner as "Timmy" Kirtdoll is 14-020-031-049-10 (Defs' Ex. 3 to Affidavit of Gary Gaudard, ECF No. 38-2 at PageID.94; Govt's Ex. 4, ECF No. 48-4 at PageID.138).  The government suggests that "893½ Carberry Road" is the proper numerical address of the premises to be searched as evidenced by a photograph taken of mail addressed to Kirtdoll at that residence (Govt's Ex. 3, ECF No. 48-3 at PageID.135).

## II.  ANALYSIS

### A.  Motion Standard

The Fourth Amendment requires that a search warrant be supported by probable cause and describe with particularity the place to be searched and the items to be seized.  U.S. Const. amend.

IV ("… no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *see United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008); *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003).

Courts apply a two-prong test to determine (1) "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort" and (2) "whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Gahagan*, 865 F.2d 1490, 1496 (6th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989); *see also United States v. Pelayo-Landero*, 285 F.3d 491, 496 (6th Cir. 2002) (citing *Gahagan* and stating "[t]he test … is not whether the description is technically accurate in every detail"). Rather, courts "routinely uphold warrants […] where one part of the description might be inaccurate but the description has other accurate information to identify the place to be searched with particularity." *Id.* at 497 (citing *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998)).

Ordinarily, the exclusionary rule requires that "all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source." *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (quoting *Mapp v. Ohio*, 367 U.S. 643, 654 (1961)). In *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court held that suppression of evidence obtained from an invalidated search warrant "is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926. This "good faith exception" does not apply where: (1) "the supporting affidavit contained knowing or reckless falsity;" (2) "the issuing judge wholly abandoned his judicial role;" (3) "the affidavit is so lacking in probable cause

4

as to render official belief in its existence entirely unreasonable;" or (4) "where the officer's reliance on the warrant was neither in good faith nor objectively reasonable." *United States v. Abboud*, 438 F.3d 554, 578 (6th Cir. 2006) (citation and quotations omitted).

As a threshold matter, both parties submitted extrinsic evidence in support of their arguments. However, "'[t]he review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit.'" *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)); *Fry v. Robinson*, 678 F. App'x 313, 318–19 (6th Cir. 2017) (same). "[A] presumption of validity exists with respect to the affidavit supporting the search warrant. And, whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound discretion of the district court." *Bateman*, 945 F.3d at 1008 (cleaned up) (citing *Franks v. Delaware*, 438 U.S. 154 (1978), and *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)). Where, as here, Defendants challenge the legal sufficiency of the warrant and do not "challenge the truth of any of the facts or evidence in the affidavit;" the Court does not look beyond the four corners of the affidavit and determines that an evidentiary hearing is not required under the circumstances presented. *Baker*, 839 F. App'x at 989.

## B. Discussion

Defendants argue that the search warrant in this case fails to satisfy the Fourth Amendment because the warrant "describes two separate properties with no reasonable way to determine which property is intended to be searched" (ECF No. 38 at PageID.71). Specifically, Defendants argue, the house at 893 Carberry Road, as identified in the warrant by address and Cass County Tax Identification number, is distinct from the house on Lizzi Street, as described by appearance and

location in the warrant (*id.* at PageID.70).  Defendants assert that the "'probability that another premises might be mistakenly searched'" is especially high because the search warrant states that: "(1) detectives observed the defendant Tommy Kirtdoll drive to '893 Carberry Road' as part of alleged drug deals; and (2) that Mr. Kirtdoll was 'parolled [sic] to 893 Carberry,' which is [a] different address than the property on Lizzie [sic] St " (*id.* at PageID.71–72).  Defendants cite to *Knott v. Sullivan*, 418 F.3d 561, 569 (6th Cir. 2005), as illustrative that the search warrant "errors in the instant case are extensive and particularly dangerous in that they accurately describe property that 'could have also been the target of a search'" (*id.* at PageID.72).  Defendants argue that the search warrant is "facially deficient" and the Court "should suppress the evidence seized during execution [of the warrant] as 'fruit of the poisonous tree'" (*id.*) (citing *Leon*, 468 U.S. at 899).

The government responds that the particularity requirement is satisfied by the warrant in this case because "Trooper Ashlock accurately described the premises to be searched," including the following descriptors:  "a one-story, single-family dwelling"; "light blue in color with white trim"; "a red star affixed to the west side of the house"; "the first structure on the north side of Lizzi Street, on the east side of Carberry Road, with a front door facing south toward Lizzi Street" (ECF No. 48 at PageID.116).  The government further argues that there was "no danger" that Trooper Ashlock and the SWET team would mistakenly search the wrong house because "[t]he investigative team had been surveilling Kirtdoll and Kowalewski for months before the search warrant was drafted, authorized, and approved" and the team had "actual knowledge" of Defendants' residence (*id.* at PageID.116–117).  According to the government, "[a]n officer who followed the[] directions [in the warrant] would arrive at the correct residence" (*id.* at PageID.117) and neither of the two errors in the warrant "result in indistinguishable confusion about an entirely separate property that police could have mistakenly searched" (*id.* at PageID.118).

The government also argues that the good faith exception to the exclusionary rule applies because the warrant was "not so facially deficient" that the executing officers could not reasonably presume it to be valid (ECF No. 48 at PageID.120) (citing *Leon*, 468 U.S. at 923).  The government contends in particular that:   (i) a reasonably well-trained officer could have overlooked the numerical errors altogether because of the "thorough description" of the residence and "detailed driving directions"; (ii) Trooper Ashlock "reasonably believed that the warrant was nevertheless sufficiently particular" such that suppression of any evidence seized would not further the purpose of the exclusionary rule (*id.* at PageID.121) (citing *United States v. Watson*, 498 F.3d 429, 434 (6th Cir. 2007)).

In reply, Defendants argue[2] that the warrant's "deficiency is beyond clerical" (ECF No. 50 at PageID.148).  For instance, Kirtdoll argues that "it is not clear from the face of the Warrant" and accompanying affidavit whether investigators surveilled Kirtdoll "drive to or towards 893 Carberry Road, or the property also described in the Warrant as a residence 'commonly known as' 893 Carberry Road that is 'the first structure on the north side of Lizzi[e] Street…'" (*id.*) (citing

---

[2] Defendant Kowalewski joined in the arguments made in Defendant Kirtdoll's reply brief (ECF No. 51 at PageID.150).  Defendant Kowalewski's reply also contains an assertion that Trooper Ashlock's affidavit contains "misstatements" regarding one paragraph of the affidavit identifying Kowalewski's vehicle as black, instead of purple (*id.* at PageID.150–151).  Counsel for Defendant states, "while counsel now does not believe that there is an issue to raise under *Franks v. Delaware*," "counsel will apply for a subpoena for Trooper Ashlock in order to determine whether he was reckless, negligent or otherwise untruthful in statements made in the affidavit" (*id.*).  At this time, Kowalewski's vague assertion does not raise a sufficiently definite contested issue of fact to require an evidentiary hearing.  *See Abboud*, 438 F.3d at 577 ("An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question.") (emphasis in original) (quotation omitted); *see also Baker*, 839 F. App'x at 989 ("To be entitled to a *Franks* hearing, [a defendant] must (1) make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and (2) prove that the false statement or material omission is necessary to the probable cause finding in the affidavit….").

ECF No. 48-1 at PageID.126, ¶ 1).  Kirtdoll contends that nothing in the affidavit links the house

on Lizzi Street "to the drug buys attributed" to Kirtdoll (*id.*).  Because 893 Carberry Road "is an

actual address in the same proximity of the other property also described" in the warrant, Kirtdoll

argues that the errors are more than clerical and do not satisfy the particularity requirement of the

Fourth Amendment (*id.* at PageID.148–149).

　　　While Defendants' points are well made in light of the fact that there is a house at "893

Carberry Rd." and one as locationally described on Lizzi Street, upon careful inspection of the

warrant and affidavit, the Court determines that the government's arguments have merit and are

outcome-determinative.

　　　First, the Court determines that despite the apparent omission of the exact address and a

transposition of the last two digits of the tax identification number, the warrant at issue also

contains several visual and locational descriptives that identify the proper residence to be searched

with particularity.  Specifically, the warrant provides a qualifier that the premises' address is

"commonly referred to as" 893 Carberry Road (Def's Ex. A, ECF No. 38-1 at PageID.74).  The

warrant also indicates that the house is the "first structure on the North side of Lizzi Street," that

it is located on the east side of Carberry Road, that its driveway runs perpendicular to Lizzi Street,

and that it "has a front door facing south towards Lizzi Street" (*id.*).  The warrant describes the

appearance of the house as a "one story, single family dwelling" that is "light blue in color with

white trim" (*id.*).  Last, the warrant describes the premises as having a "red star affixed to the

siding of the west side of the residence" (*id.*).  The warrant thus identifies significant other parts

of the premises with particularity, including the precise location and direction of the driveway and

front door, the colors of the structure, and the unique identifier that there is a red star affixed to the

west side of the residence.

Moreover, the affidavit identifies "Lizzi" Street as "a dirt road that runs perpendicular to Carberry Rd., Howard Twp., Cass County, Michigan" and states that "[t]here are two residences that have driveways on Lizzi Street" with "[o]nly one residence … on the North side of Lizzi Street" (Def's Ex. A, ECF No. 38-1 at PageID.78, ¶ F).  The affidavit identifies the sole residence on the North side of Lizzi Street as having the "commonly known address of 893 Carberry Rd., Howard Twp., Cass County, Michigan" (*id.*).  Last, the affidavit on at least one occasion identified Defendant Kowalewski as "driving to Lizzi Street" and is otherwise consistently referred to as "893 Carberry Road" (*id.* at PageID.78–79, ¶¶ E–G, I, K–L).

For these reasons, the place to be searched in the warrant "is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort" and the level of detail in the warrant removes the probability that the wrong location could be searched.  *Gahagan*, 865 F.2d at 1496; *see United States v. Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016) (finding that error in describing residence and providing incorrect address "does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched, especially when the warrant affiant participates in the execution of the search"); *United States v. Durk*, 149 F.3d 464, 466 (6th Cir. 1998) (upholding warrant notwithstanding two inaccuracies in numerical address and location of house because the description correctly identified other parts of the premises with particularity, including a unique metal storage shed).[3]  Specifically, here, the executing officer would be able to

---

[3] As the government correctly argues, *Knott* (cited by Defendants) is distinguishable because it concerned a search of a vehicle where the Sixth Circuit determined that "'virtually every descriptor of the vehicle included in the search warrant and accompanying affidavit was incorrect[,]'" such as the make, model, vehicle identification number, and license plate number (ECF No. 48 at PageID.118) (quoting *Knott*, 418 F.3d at 569).  *See United States v. Wilson*, 307 F. App'x 880, 883 (6th Cir. 2009) (distinguishing *Knott* and upholding warrant where "warrant incorrectly stated that [the house had] one common entrance," but "stated that the area to be searched was the 'lower

distinguish the premises to be searched with reasonable effort despite the error in the numerical

address and Tax Identification number based on the various descriptive factors provided, to wit:

the house's location on Lizzi Street, that it is the only house on the north side of a dirt road that is

east of and perpendicular to Carberry Road, the direction of the front door and driveway, the color

of the house, and the red star affixed to the blue siding of the residence.

Further, the Sixth Circuit has found that the probability that an incorrect location could be

searched is lessened where the warrant's executing officer was personally aware of the premises

to be searched, as is the case here. *See Durk*, 149 F.3d at 466 (even an inaccurate warrant would

be less likely to produce a mistaken search because "the executing officer … was also the affiant"

and was familiar with the property to be searched); *Wilson*, 307 F. App'x at 883 (considering

affiant's briefing of other officers on premises to be searched and affiant's participation in the

search as "further reduc[ing] the chance that the wrong location would be searched"); *see also*

*Gahagan*, 865 F.2d at 1497–98 (upholding validity of warrant despite incorrect address, relying in

part on accuracy of affidavit describing premises to be searched and "the relevant information

known by the executing officers").

Second, even assuming that the warrant was not sufficiently particular, the good faith

exception applies where, as here, law enforcement's reliance on the warrant was reasonable

because the affidavit contains significant descriptors of the place to be searched, and there is no

evidence of law enforcement's knowing or reckless disregard for the truth. *See Herring v. United*

*States*, 555 U.S. 135, 147–48 (2009) ("[W]hen police mistakes are the result of [accidental

typographical] negligence … rather than systemic error or reckless disregard of constitutional

---

portion of the dwelling'" and warrant "accurately stated the address of the location, the cross-
streets, and the side of the street on which [the house was] located").

requirements, any marginal deterrence [of the exclusionary rule] does not pay its way."); *Watson*, 498 F.3d at 429, 433 ("Although … the warrant was not a model of clarity, we nonetheless cannot say that warrant was 'so facially deficient … that the executing officers [could] not reasonably [have] presume[d] it to' authorize a search of the residence."); *see also United States v. Castro*, 881 F.3d 961, 966 (6th Cir. 2018) (explaining that the good faith exception would apply where the error was not "glaring" or obvious at a "simple glance" so as to "make reliance on it unreasonable") (internal quotation marks omitted).

Accordingly, Defendants' motion is properly denied.

### III.  CONCLUSION

Defendants' Motion to Suppress (ECF No. 37) is denied.  A notice cancelling the currently scheduled hearing and an Order consistent with this Opinion will be entered.


Dated:  December 12, 2022                                      /s/ Jane M. Beckering
                                                                        JANE M. BECKERING
                                                                        United States District Judge